IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL BERNARD MANCHAS, III,    )
                 Petitioner    )
                              )
    vs.                       )      Civil Action No. 07-1112
                              )      Judge David S. Cercone/
                              )      Magistrate Judge Amy Reynolds Hay
SUPERINTENDENT OF SCI         )
HUNTINGDON; ATTORNEY GENERAL )
OF THE STATE OF PENNSYLVANIA,   )
                 Respondents   )

## REPORT AND RECOMMENDATION

### RECOMMENDATION

It is recommended that the petition for writ of habeas corpus, filed pursuant to 28 U.S.C.

§ 2254, be denied and that a certificate of appealability also be denied.

### REPORT

Daniel Bernard Manchas, III ("Petitioner"), a state prisoner, was convicted by a jury of

inter alia, first degree murder and conspiracy to commit murder, and consequently was sentenced

to life in prison.  Petitioner has filed a federal habeas petition pursuant to Section 2254, attacking

his convictions.  Petitioner concedes that he shot into a trailer home and, that as a result of his

shooting into the home, the victim was shot in the head and killed.  Petitioner's primary

argument in the instant habeas petition is that he did not have the intent to kill which is required

for a first degree murder conviction and that his trial counsel was ineffective for failing to utilize

an expert witness to support his argument.  Because the State Courts rejected this contention as

well as the other issues he raises, and because Petitioner fails to show that the State Courts'

disposition of his claims was contrary to or an unreasonable application of United States Supreme Court precedent, his petition should be denied.

### A.    Relevant Procedural History

Petitioner raises the following issues in this habeas petition:

[1.]  WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL A FORENSIC EXPERT TO TESTIFY ON APPELLANT'S BEHALF.

[Dkt. [7-2] at 26.]

[2.]  WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL A CRIME SCENE INVESTIGATOR TO TESTIFY ON PETITIONER'S BEHALF.

[id., at 36.]

[3.]  WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL OR INTERVIEW AN ESSENTIAL WITNESS, CHAD SIMON, AT TRIAL.

[id., at 38.]

[4.]  WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO INFORM PETITIONER THAT HIS JUVENILE RECORD COULD BE INTRODUCED AGAINST HIM AT TRIAL IF PETITIONER TESTIFIED & FAILED TO GIVE THE PETITIONER ANY PROFESSIONAL ADVICE AS TO HIM TAKING THE STAND.

[id., at 45.]

[5.]  WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR ALLOWING THE LAWYER/CLIENT RELATIONSHIP TO BREAK DOWN TO SUCH A POINT THERE EXISTED ALMOST NO COMMUNICATION FROM TRIAL COUNSEL TO CLIENT.

[id., at 48.]

[6.]  WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CROSS EXAMINE COMMONWEALTH WITNESSES REGARDING WHERE THE FIRST SHOT ORIGINATED.

[id., at 50.]

[7.]  WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR ALLOWING A FORMER EMPLOYEE OF THE DISTRICT ATTORNEY'S OFFICE TO SERVE ON THE JURY, FOR NOT STRIKING THIS JUROR.

[id., at 52]

[8.]  WHETHER TRIAL COUNSEL WAS INEFFECTIVE BECAUSE COUNSEL ALLOWED THE JURY TO BE CHARGED ON THE THEORY OF TRANSFERRED INTENT AFTER THE TRIAL COURT RULED AS FOLLOWS: ("so counsel may properly argue before the jury, the Court will not allow transfer intent theory.")(N.T. Trial p. 221). [emphasis] [sic]

[id., at 54.]

[7.]  THE EVIDENCE WAS INSUFFICIENT TO ESTABLISH THE PETITIONER HAD ACTED WITH MALICE AND PREMEDITATION SO AS TO SUSTAIN THE CONVICTION FOR FIRST DEGREE MURDER.

[Dkt. [12-2] at 2.]

[8.]  THE COURT ERRED BY NOT SUSTAINING PETITIONER[']S OBJECTION TO THE PROSECUTOR'S CLOSING ARGUMENT THAT USED TESTIMONY STRICKEN FROM THE RECORD.

Id., at 4.[1]

The facts relevant to the crimes were recounted by the Trial Court as follows:

At trial the Commonwealth presented the testimony of George Simon, who testified that he, Catherine McKenna and Robert Cumberland, Sr., met with the Defendant [i.e., Petitioner] to purchase cocaine at about 10:30 P.M. N.T. at 23. Although the agreed upon price was $225.00, Simon only gave the Defendant $205.00.  *Id.* at 24.  Upon counting the money, the Defendant became angry and threw the money down, whereupon Simon picked the money up and told the

_____

[1]  Petitioner expressly states in his habeas petition that he abandons some of the issues recounted in the habeas petition. Dkt. [12] at 44; 49.  The ones listed above however are not abandoned.  Some other issues which Petitioner lists on page 6 of Dkt. [12], i.e., direct appeal issues lettered as C and D, although listed therein, are never argued in the body of the habeas petition.  As such, those two claims are deemed abandoned as well.

Defendant he was going to keep both the money and the cocaine and proceeded to leave. *Id.* at 25. As Simon was leaving the area, he was approached by the Defendant who stated that "he was going to get his boys and come and see [George Simon] and shoot [him], or shoot us." *Id.* at 26. The Defendant then left.

Later that night, after Simon had returned to his mobile home, he received a phone call from Robert Cumberland, Jr. [i.e., the son of the victim here, Robert Cumberland, Sr.] *Id.* at 30. Cumberland, Jr. put the Defendant on the telephone and the Defendant told Simon that "we're coming up there and it's going to be a bad scene." *Id.* In the trailer that night were four children, Chad Simon, Joshua McKenna, Mary McKenna and Brett McKenna, and three adults, Robert Cumberland, Sr. [i.e., the victim,] Cathy McKenna and Simon. *Id.* at 32-33.

Between 4 A.M. and 5 A.M., as Simon exited the bathroom, he heard a shot and saw his little brother gathering the other children in the bedroom. *Id.* at 35. He became terrified when he saw Robert Cumberland, Sr., lying on the floor, apparently dead from being shot. *Id.* at 34-35. As Cathy called 911, a second shot rang out, shattering glass in the living room where Cathy was located. *Id.* at 35. A window, located about two feet from the body of the victim and fifteen feet from him, had a bullet hole through it. *Id.* at 37 and 39. Simon further testified that the window had been "lit up" at the time of the first shot. *Id.* at 40.

After the drug transaction earlier that night, the Defendant appeared at the home of Robert Cumberland, Jr., around 10:30-11:00 P.M., screaming that Cumberland, Sr., "[a]nd one of his friends ripped him off in a drug deal. . . ." *Id.* at 55. Robert Cumberland, Jr., further testified that the Defendant told him that the other person was George Simon. *Id.* at 56. Cumberland, Jr., then took the Defendant to show him where Simon lived; however, no one was at home and they left.

After returning to Cumberland, Jr.'s, apartment, the Defendant spoke by telephone with Simon and told him the he was going to kill him. *Id.* at 58. A short time later, Cumberland, Jr., gave the Defendant his [i.e., Cumberland, Jr.'s] rifle. With the rifle, the two of them returned to the Simon house with the Defendant driving. *Id.* at 59-60. There were lights on in the residence, and cars were parked outside. *Id.* at 60. Turning the lights of the vehicle off, the Defendant stopped the vehicle, and, using the scope fired the first shot. *Id.* at 60-61. After firing, the Defendant drove past the Simon residence, turned around, came back to the trailer, got out of the vehicle, and fired again. *Id.* at 62. Cumberland, Jr., then testified that, at that point, they left the scene. *Id.* at 63.

Catherine McKenna, who was in the living room, testified that, at the time of the first shot, the lights were on and Robert Cumberland, Sr., was looking out the window. *Id.* at 91-92. After the shot, she saw the victim fall to the floor and blood was everywhere. *Id.* Chad ran to the bedroom and covered the other children with a mattress to protect them and, although very frightened, she called 911. *Id.* at 92. While she was on the telephone with 911, a second shot passed just above her. *Id.* at 92-93.

> Lastly, Dr. Cyril H. Wecht testified that, in this case, by virtue of the nature of the gunshot wound of the head, death would have been immediate. *Id*. at 182.

Dkt. [27-8] at 2 to 4.

Petitioner initially filed the instant habeas in the United States District Court for the Middle District of Pennsylvania, which transferred the case to this Court given that the State Court which convicted Petitioner is located within this District. The habeas petition was docketed in this court. Dkt. [12]. Attached to that habeas petition was a purported "expert report" dated June 15, 2007, which opines in support of Petitioner's theory of the case. Dkt. [12-2] at 6 to 16. This "report" was never presented to the State Courts. The Respondents filed a very brief answer, Dkt. [19], denying that Petitioner was entitled to any relief. Petitioner, after being granted an extension of time in which to do so, filed a traverse. Dkt. [22]. Contemporaneously, he filed a motion for leave to conduct fact finding procedures, Dkt. [23], to which the Respondents filed a response. Dkt. [25]. The motion for leave was denied for the most part, with the Court ordering the Respondents to supply the preliminary hearing transcript of Petitioner's co-actor, Robert Cumberland, Jr. Dkt. [26].

**B. AEDPA is applicable**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (AEDPA), which amended the standards for reviewing State court judgments in federal habeas petitions filed under 28 U.S.C. § 2254, was effective April 24, 1996. Because petitioner's habeas petition was filed in the year 2007, AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the State courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, AEDPA provides the applicable deferential standards by which the federal habeas court is to review the State courts' disposition of that issue. See 28 U.S.C.§ 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court has expounded upon the standard found in 28 U.S.C. § 2254(d). In Williams, the Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the State court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that State court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." id. at 404-05 (emphasis deleted). The Court explained the two situations in the following terms:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13. The Court of Appeals for the Third Circuit has also elucidated the "contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Werts v. Vaughn, 228 F.3d at 197 (quoting Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999)(en banc)). Moreover, it is Petitioner's burden to prove the State court decision is

either contrary to or an unreasonable application of clearly established federal law.  See Matteo, 171 F.3d at 888; Werts v. Vaughn, 228 F.3d at 197.[2]

## C.  DISCUSSION

### 1.  Ineffective Assistance of Counsel

The first eight issues listed above involve claims of ineffective assistance of counsel. Hence, we  turn initially to the standards for ineffectiveness.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel.  First, the defendant must show that counsel's performance was deficient.  This requires showing that "counsel's representation fell below an objective standard of reasonableness."  id. at 688; see also Williams v. Taylor, 529 U.S. at 390-91.  In reviewing counsel's actions, the court presumes that counsel was effective.  Woods v. McBride, 430 F.3d 813, 821 (7th Cir. 2005)("We view counsel's performance deferentially, with the understanding that there is a great deal of room for disagreement among reasonable attorneys as to the appropriate strategy or tactics to employ in the course of representation, so we indulge the 'strong presumption that counsel rendered reasonably effective assistance.'")

 Because the Strickland test is one of objective reasonableness, it does not matter if counsel actually considered the course taken or foregone to determine whether the actions or

_____

[2]  AEDPA also permits federal habeas relief where the State court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. 2254(d)(2).  It does not appear that Petitioner properly casts his arguments in terms of an unreasonable determination of the facts.  However, to the extent that he would, the court concludes that none of the factual determinations of the state courts is unreasonable.

omissions were objectively reasonable; so long as a hypothetical reasonable attorney could have done the same, there is no ineffectiveness. Chandler v. United States, 218 F.3d 1305, 1316 n.16 (11th Cir. 2000). In light of the strong presumption of counsel's effectiveness and the objective reasonableness standard, the Court of Appeals for the Third Circuit has explained, "[i]t is [] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997)(quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." id. at 694; see also Williams, 529 U.S. at 391. In addition, in undertaking a prejudice analysis, the Court properly considers the strength of the evidence against the defendant because "... a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999). The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987). As a result, if a petitioner fails on either

prong, he loses.  Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000);  Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999).

The first eight issues Petitioner raises in this habeas petition are issues of ineffectiveness of trial counsel.  Petitioner presented all of these ineffective assistance of trial counsel claims in his amended counseled PCRA petition.  The PCRA Court Judge, who was also the Trial Court Judge, held an evidentiary hearing and afterwards denied relief.  In his opinion denying relief, the PCRA Court addressed all of the trial counsel ineffectiveness issues on the merits.  Dkt. [27-12].[3] Petitioner appealed to the Superior Court which affirmed the PCRA court's disposition of all of the claims of trial counsel's ineffectiveness, i.e., the very same claims Petitioner raises in his present habeas petition.  Dkt. [27-14] at 3 to 4.   In affirming the PCRA Court's disposition of the trial counsel ineffectiveness claims, the Superior Court adopted the PCRA Trial Court's opinion as its own. Dkt. [27-14] at 6 ("After thoroughly reviewing Manchas's various claims of ineffective assistance of trial counsel raised in his first issue, we conclude that Manchas's arguments have no merit for the reasons stated in the PCRA court's Opinion.  Accordingly, we affirm the PCRA court Order denying Manchas's claims on the basis of that Opinion with regard to this issue.").

---

[3]  Petitioner suggests that the State Courts did not address some of his claims on the merits and that a de novo review applies.  Dkt. [12] at 11.  He implies that the State Courts did not rule on his constructive denial of counsel claims.  See id.   The reason they did not rule on any such claims is that Petitioner did not present any constructive denial of counsel claims to the State Courts, instead he presented only ineffective assistance of counsel claims to the State Courts and they did rule on those ineffectiveness claims.

In disposing of these ineffective assistance claims, the State Court relied upon the test announced in Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987).[4] The Pennsylvania Supreme Court has developed an ineffective assistance standard that requires a petitioner to demonstrate that (1) the underlying claim is of arguable merit, (2) counsel had no reasonable basis for the act or omission in question, and (3) but for counsel's act or omission, the outcome of the proceedings would have been different. See Commonwealth v. Douglas, 645 A.2d 226, 230-31 (Pa. 1994); Commonwealth v. Pierce, 527 A.2d at 975. This standard has been found to be materially identical to the test enunciated in Strickland. Werts, 228 F.3d at 203. The Third Circuit has ruled that this standard is not "contrary to" Strickland, and therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of Strickland to [petitioner's] ineffectiveness claim was objectively unreasonable, i.e., the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under Strickland." id. at 204. Because the Superior Court decided Petitioner's claims of ineffective assistance of counsel under the standards of Pierce and those standards are essentially the same as the Strickland standard, this court is required to apply the deferential standard of 28 U.S.C. § 2254(d), which demands that a habeas petitioner demonstrate that the State Court's adjudication of the federal claim resulted in a decision that was contrary to Supreme Court precedents or an unreasonable application of federal law. Pursuant to the holding of Werts, Petitioner is barred from arguing

---

[4] The PCRA Court cited, *inter alia*, the opinions in Commonwealth v. Douglas, 645 A.2d 226 (Pa. 1995), (incorrectly cited by the PCRA Court as "645 A.2d 266", Dkt. [27-12] at 8) and Commonwealth v. Durst, 559 A.2d 504 (Pa. 1989)(similarly incorrectly cited as "599 A.2d 504") , Dkt. [27-12] at 8, and the Superior Court cited Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999) and Commonwealth v. Meadows, 787 A.2d 312 (Pa. 2001) as the authority for the legal test of ineffectiveness. Dkt. [27-14] at 5. These various cases simply applied the test definitively announced in Commonwealth v. Pierce.

that the Superior Court's decision applying the <u>Pierce</u> standard is contrary to the standard

announced in <u>Strickland</u>.[5]  Petitioner could argue the second sense of "contrary to," i.e., the

Superior Court reached a different result from that of the federal Supreme Court on a set of

materially indistinguishable facts.[6]

However, Petitioner has not argued and does not point to any federal Supreme Court

decision in existence at the time that the State Courts rendered their decisions in this case, that

has a set of facts that are materially indistinguishable from Petitioner's case where the outcome

was different from the outcome reached by the Superior Court herein.  <u>Williams</u>, 529 U.S. at 412

(analyzing whether a state court decision is "contrary to" Supreme Court precedent requires

analysis of the "holdings as opposed to the dicta, of this Court's decisions as of the time of the

relevant state court decision.").  Accordingly, Petitioner has not shown that the Superior Court's

_____

[5] In the course of its opinion, the Superior Court on appeal from the PCRA court's disposition, referenced the PCRA standard for ineffectiveness found at 42 Pa.C.S. § 9543(a)(2)(ii).  42 Pa.C.S.A. § 9543(a)(2)(ii) provides in relevant part that PCRA relief is available if it is established that conviction resulted from "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."  However, as the Pennsylvania Supreme Court made clear, the PCRA standard found at 42 Pa. C.S. § 9543(a)(2)(ii) is the same as the <u>Strickland</u> standard. <u>Commonwealth v. Kimball</u>, 724 A.2d 326, 332-333 (Pa. 1999); <u>Commonwealth ex rel</u>. <u>Dadario v. Goldberg</u>, 773 A.2d 126, 129 (Pa. 2001) ("Accordingly, we held [in <u>Kimball</u>] that the *standard* of review, pursuant to  Section 9543(a)(2)(ii), of an ineffectiveness claim raised in a PCRA petition is the <u>Strickland</u> standard, as followed by this Court in <u>Commonwealth v. Pierce</u>, 515 Pa. 153, 527 A.2d 973 (1987).").  Because the Superior Court referenced both the legal standard in of Section 9543(a)(2)(ii) and the <u>Pierce</u> standard and because both of those standards are the same as the <u>Strickland</u> standard, this court is required to apply the deferential standard of 28 U.S.C. § 2254(d), which requires that a habeas petitioner demonstrate that the State Court's adjudication of the federal claim resulted in a decision that was contrary to Supreme Court precedents or an unreasonable application of federal law.

[6] In light of <u>Werts</u>, we reject Petitioner's suggestions that the State Courts' use of the <u>Pierce</u> standard is contrary to <u>Strickland</u>.  Dkt. [12] at 16.  <u>But</u> <u>see</u> Dkt. [12] at 25 (wherein Petitioner contradictorily contends that "Pierce adopts the entire <u>Strickland</u> standard and test for I.A.C.") and <u>id.</u>, at 28 to 29 (wherein Petitioner argues that "a Pennsylvania court <u>when</u> using the <u>Pierce</u> test for I.A.C. claims is presumed to apply clearly established federal law and is due the deference that is required by 28 U.S.C. § 2254(d).").

decision in this case was contrary to clearly established federal law as determined by the United States Supreme Court, in either of the two senses of "contrary to."

Thus it remains open to Petitioner to show that the Superior Court's decision was an unreasonable application of federal law. Petitioner has not carried his burden to show that the Superior Court's decision constituted an unreasonable application of federal law concerning ineffective assistance of counsel. In fact, throughout his habeas petition, he argues as if this case were on direct appeal. He never explicitly argues that the State Courts' adjudication of his claims was contrary to or an unreasonable application of any particular extant United States Supreme Court precedent. Hence, he fails to carry his burden to prove entitlement to relief on the claims of trial counsel's ineffectiveness.

The court must add one note to the thorough analysis of the PCRA court. Specifically, we will address briefly the first two related claims of trial counsel's alleged ineffectiveness, i.e., her failure to call an expert witness. Petitioner argues that his trial counsel was ineffective for failing to call experts who **could** have corroborated Petitioner's version of the events. Petitioner's version of the events was that there were two shots fired and he definitely fired the first shot. Petitioner further contends that the first shot was the shot that came through the front of the trailer wall near the kitchen, i.e., on the Northern side of the trailer traveled through the trailer and may have hit the victim. Dkt. [27-13] at 13 to 14. See also Dkt. [12-2] at 17 (diagram of the trailer and crime scene). Petitioner contends that if it were the first shot which had killed the victim, then there would be no evidence of intent to kill because he merely shot into the wall of the trailer without seeing anyone, as opposed to the Commonwealth's theory of the case, which was that Petitioner saw the victim in the window of the trailer and shot him through the

12

window and that this was the first shot fired (whereas Petitioner contends that the shot through the window was the second shot fired).   Petitioner also testified at trial that although he fired the first shot, he did not fire the second shot, which he alleges was fired by Robert Cunningham Jr., (Dkt. [27-17] at 5 to 6), through the window which was on the side of the trailer.  This is the window through which Robert Cunningham, Katherine McKenna and George Simon, testified the first shot had come and killed the victim, and through which the Commonwealth asserted came the fatal shot that killed Robert Cunningham.

Although Petitioner was provided a hearing on his PCRA petition, and although he raised the claim that a forensics expert or experts might have helped his case, and that his trial counsel was ineffective for not obtaining and utilizing one, Petitioner failed to present any forensic expert to testify at the PCRA hearing in order to support his speculation that forensics might have helped his case.  See, e.g., Dkt. [27-12] at 3 Findings of Fact Nos. 3 -4 ("3. At the evidentiary hearing, the Defendant offered no evidence that a forensic or DNA expert would have provided testimony that would have raised a question" as to the reliability of the conviction. "4.  At the evidentiary hearing, the Defendant offered no evidence that a crime scene investigator would have provided testimony that would have raised a question" as to the reliability of the conviction.).   Hence, at the PCRA hearing, Petitioner utterly failed to provide evidence in support of his ineffectiveness claim in this regard.  Thus, he failed to carry his burden to show that he was prejudiced by trial counsel's failure to obtain and utilize an expert.  Absent establishing that such an expert's testimony would have in fact been helpful to Petitioner, there is

simply no evidence of prejudice.  Accordingly, Petitioner failed to establish in the State Courts

his trial counsel's ineffectiveness for failing to call or utilize a forensic expert.[7]

It must be noted that Petitioner now belatedly attempts to bring before this Court, a

purported expert report from one "Robert Hicks" a self described "Investigative Forensic

Reporter and Publisher" who has some affiliation with the so-called "Legal Researcher Exhibit

News."  Dkt. [12-2] at 6 to 26.  However, we are barred from considering this late produced

"expert" report given that Petitioner failed to adduce this report or a similar one in the PCRA

hearing, and so he failed to develop in the State Courts the factual underpinning of his

ineffectiveness claim which was based on trial counsel's alleged failure to obtain and/or utilize a

forensic expert.  See e.g., 28 U.S.C. § 2254 (e)(2).[8]  Williams v. Taylor, 529 U.S. 420, 437

---

[7]  This same reasoning about the absence of evidence indicating that the testimony of an expert
would have in fact been supportive of Petitioner applies equally to the alleged testimony of Chad Simon
with respect to where the first bullet came into the trailer, i.e., whether through the front of the trailer or
through the window.  In two statements to police, Chad Simon said the first bullet came through the front
of the trailer, which supports Petitioner's theory.  However, without testimony from Chad at the PCRA
hearing as to what he would have testified to at trial, there is no way for Petitioner to prove prejudice
from his trial counsel's failure to call Chad.

[8]  AEDPA provides that

(2) If the applicant has failed to develop the factual basis of a claim in State court
proceedings, the court shall not hold an evidentiary hearing on the claim unless the
applicant shows that--
    (A) the claim relies on--
        (i) a new rule of constitutional law, made retroactive to
        cases on collateral review by the Supreme Court, that
        was previously unavailable; or
        (ii) a factual predicate that could not have been
        previously discovered through the exercise of due
        diligence; and
    (B) the facts underlying the claim would be sufficient to establish by
    clear and convincing evidence that but for constitutional error, no
    reasonable factfinder would have found the applicant guilty of the
    underlying offense.

(2000) ("Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings."); Breakiron v. Horn, No. Civ. A. 00-300, 2008 WL 4412057, at * 13 (W.D.Pa. Sept. 24, 2008).  As recently explained by a District Judge of this Court:

> Because he [i.e., the death sentenced habeas petitioner] never presented these "new" articles [allegedly showing prejudicial news coverage in order to support a jury pool taint theory thereby requiring a change of venue]  to the state courts, they are not part of the state court record and this court may not consider them in reviewing this claim. The United States Supreme Court "ha[s] made clear that whether a state court's decision was unreasonable must be assessed in light of the record the [state] court had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004) ( per curiam ) (*citing Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) ( per curiam ) (denying relief where state court's application of federal law was "supported by the record"); *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003) (reasonableness of state court's finding assessed "in light of the record before the court"); *Bell*, 535 U.S. at 697 n. 4 (declining to consider evidence not presented to state court in determining whether its decision satisfied § 2254(d)'s standard of review)); *see also Taylor*, 504 F.3d at 436-37, 439 n. 19 (petitioner not entitled to introduce new evidence in federal habeas proceeding when he had the opportunity to present that evidence when he was litigating the claim at issue in state court).

---

See also  Boyko v. Parke, 259 F.3d 781, 789-90 (7th Cir.2001) wherein the Court explained as follows:

> A federal court's ability to hold an evidentiary hearing in order to supplement the record when the petitioner "has failed to develop the factual basis of a claim in State court proceedings" is severely circumscribed. 28 U.S.C. § 2254(e)(2). . . . We recognize that Mr. Boyko has not yet asked the district court to hold an evidentiary hearing; instead, he seeks permission to conduct discovery and to expand the record. These procedural devices, however, can be used to introduce new factual information into the record in lieu of an evidentiary hearing. *See, e.g., Brown v. Johnson*, 224 F.3d 461, 469 (5th Cir. 2000) (stating that expansion of the record can be used as a "paper hearing" in place of an evidentiary hearing). When expansion of the record is used to achieve the same end as an evidentiary hearing, the petitioner ought to be subject to the same constraints that would be imposed if he had sought an evidentiary hearing. *See McNair v. Haley*, 97 F.Supp.2d 1270, 1286 (M.D.Ala.2000) ("The petitioner cannot use Rule 7 [of the Rules Governing § 2254 cases, which allows expansion of the record] to secure the benefits that only subdivision (e)(2) [of § 2254] can bestow.").

<u>Breakiron v. Horn</u>, 2008 WL 4412057, at * 13.  What the court stated in <u>Breakiron</u> is equally applicable here.

Accordingly, Petitioner is entitled to no relief based upon these claims of ineffectiveness of trial counsel.

Even if this Court were to conduct a de novo review of Petitioner's claims, as he invites this Court to do, it would not benefit Petitioner.  Even conducting a de novo review the Court would conclude that either Petitioner failed to show that his counsel lacked a reasonable basis for her actions or he failed to show that he was prejudiced by any of the alleged deficiencies in his trial counsel's representation.

Petitioner also raises herein two issues that he raised in his direct appeal.   They are:  1) the evidence was insufficient to establish that Petitioner had the mens rea for first degree murder and 2) the court erred by not sustaining petitioner's objection to the prosecutor's closing argument that used testimony which had allegedly been stricken from the record.

The Trial Court addressed the sufficiency of the evidence issue as follows:

> A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.  18 Pa.C.S.A. § 2502(a).  Evidence is sufficient to sustain a conviction for first-degree murder where the Commonwealth establishes that (1) the defendant acted with specific intent to kill; (2) a human being was unlawfully killed; (3) the person accused did the killing; and (4) that the killing was done with deliberation.  *Commonwealth v. Gibson*, 547 Pa. 71, 84, 688 A.2d 1152, 1158 (1997), *citing* 18 Pa.C.S.A. § 2502(d); *Commonwealth v. Mitchell*, 528 Pa. 546, 550, 599 A.2d 624, 626 (1991).  Instantly, the Appellant raises issues as to the first, third and fourth elements.
> "A defendant's mind and intent cannot be photographed; often there are neither photographs or eye witnesses of the crime of the identity of the criminal."  *Commonwealth v. Tyrell* , 405 Pa. 210, 217, 174 A.2d 852, 855 (1961).  However, the specific intent to kill may be found from a Defendant's words or conduct or from the attendant circumstances, not only at the time of the crime, but also, when relevant, prior and subsequent thereto, together with all inferences therefrom.  *Id*.;

*Commonwealth v. Ewing*, 439 Pa. 88, 264 A.2d 661 (1970). It is clearly settled that a defendant may be convicted on circumstantial evidence alone, and a criminal intent may be inferred by the jury from facts and circumstances which are of such a nature as to prove defendant's guilt beyond a reasonable doubt. *Commonwealth v. Ewing, supra.*

In particular, a specific intent to kill can be inferred by the use of a deadly weapon upon a vital part of the body of another human being. *Commonwealth v. Butler*, 446 Pa. 374, 378, 288 A.2d 800, 802 (1972); *Commonwealth v. Ewing, supra.*

Instantly, the Commonwealth presented testimony that the Defendant stated he was going to shoot George Simon, or the others, Catherine McKenna and Robert Cumberland, Sr. N.T. at 26. He also told Simon that he would be coming to his home and that it would be a bad scene. *Id.* at 30. The Defendant was angry at both the victim and George Simon for ripping him off in a drug deal. *Id.* at 56. Cumberland, Jr. also testified that he heard the Defendant tell Simon that he, the Defendant, was going to kill him, Simon. *Id.* at 58. On his second visit to Simon's home, the Defendant took a rifle equipped with a telescope, aimed using the scope, and fired two shots into the home, one through a lit window in which the victim was standing, killing him instantly. *Id.* at 58-62.

Thus, from his own words and conduct, a jury could reasonably infer that the Defendant had not only a specific intent to kill, but also that the killing was done with deliberation and premeditation, since the Defendant's conscious purpose was to bring about death. *Commonwealth v. Carter*, 537 Pa. 233, 643 A.2d 61 (1994).

Although the Defendant testified in opposition to the Commonwealth witnesses, it was within the province of the jury to believe the Commonwealth witnesses instead of the Defendant. . . .

Even were the Defendant to argue that there is no evidence to show that he intended to kill Robert Cumberland, Sr., that argument must fail. As testified to by Robert Cumberland, Jr., the Defendant told him he was angry with his father. N.T. at 55. The Defendant also told George Simon that he was going to shoot Simon or "shoot us," referring to Simon, McKenna and Robert Cumberland, Sr. From that testimony , the jury could reasonably find that the Defendant intended to kill Robert Cumberland, Sr., when he fired into the lit window in which the victim was standing. Further, first degree murder is not the slaying of any particular person. *Commonwealth ex. rel. McCant v. Rundle*, 418 Pa. 394, 211 A.2d 460 (1965). Rather it is the taking of the life of another, premeditatedly and with malice aforethought, regardless of the identity of the victim. *Id.* Thus whether Defendant believed that he was shooting at George Simon, or knew he was shooting at Robert Cumberland, Sr., is of no moment. He willfully, deliberately, and with premeditation, unlawfully took the life of another human being and, therefore, committed murder in the first degree.

Dkt. [27-8] at 11 to 14.

Petitioner fails to argue that this disposition is contrary to or an unreasonable application of then extant United States Supreme Court precedent, and hence he fails to carry his burden to demonstrate such, and consequently, to show entitlement to relief.  Indeed, the State Courts' disposition of this sufficiency of the evidence claim is not contrary to nor an unreasonable application of United States Supreme Court precedent.

We turn next to the second issue raised herein and also in the direct appeal.  That issue, as raised in the State Courts, appears to have been raised solely as a matter of state law error.  See, e.g., Dkt. [27-10] at 10 to 11 (Superior Court appellate brief on direct appeal).  Violations of state law do not, as a general rule, provide a basis for the grant of federal habeas relief.  Engle v. Isaac, 456 U.S. 107 (1982); Wells v. Petsock, 941 F.2d 253 (3d Cir. 1991);  Peterson v. Krysevig, Civ. A. No. 07-947, 2008 WL 4372940, at *11 (W.D.Pa. Sept. 22, 2008)("the issue was raised solely as one of state law and not of constitutional law, i.e., a violation of Pennsylvania Rules of Criminal Procedure 600 and not of the United States Constitution. Such a claimed violation of state rules of criminal procedure fails to state a claim cognizable in federal habeas proceedings.").  Petitioner alleges nothing that would take his case outside of this general rule.

Hence, any federal law issue with respect to this claim has not been fairly presented to the State Courts and therefore has not been properly exhausted and, because Petitioner cannot now go back and exhaust due to time restrictions on filing PCRA petitions, any federal law claim is now procedurally defaulted.  See, e.g., Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000).  Nor can Petitioner demonstrate cause and prejudice for any putative federal legal claim as the only claim of cause he would have is a claim of ineffective assistance of PCRA counsel for failing to

18

raise trial counsel's ineffectiveness for not raising this issue as one of federal law.   Such claims of ineffective assistance of PCRA counsel however fail to serve as cause because Petitioner had no federal right to counsel at the PCRA stage of the proceedings.  Coleman v. Thompson, 501 U.S. 722, 757 (1991) ("Because [the petitioner] had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of [his] claims in state court cannot constitute cause to excuse the default in federal habeas.");  Hull v. Freeman, 991 F.2d 86, 91 (3d Cir. 1993) ("Under Coleman, ineffective assistance of post-conviction counsel cannot constitute 'cause' because the Sixth Amendment does not entitle a defendant to post-conviction counsel"). Because Petitioner has procedurally defaulted any federal claim as to the trial court's denying the objection and because he has no cause or prejudice nor has he convinced the court that a miscarriage of justice would occur, this claim does not afford Petitioner relief.

In the alternative, even if we assumed for the sake of argument that Petitioner did fairly present this claim as a violation of federal law, as for instance a claim that the trial court's denying of the objection violated Petitioner's substantive due process rights to a fundamentally fair trial, such would still not entitle Petitioner to relief.

Petitioner premises his argument on the factual contention that the Prosecutor used testimony that was stricken from the record.  The Trial Court found, as a matter of fact, that the Prosecutor did not use testimony that was stricken from the record in his closing.  Dkt. [27-8] at 5 to 9.  Hence, the factual predicate of Petitioner's claim was without basis in the record and, hence, Petitioner fails to carry his burden to show that the Trial Court erred in overruling the objection to the Prosecutor's remarks and erred to such an extent as to deny Petitioner the

fundamental fairness required by the substantive due process protections afforded under the federal Constitution.

Even if this court were to engage in de novo review of these two issues, as Petitioner invites, such would not provide any benefit to Petitioner because the Court would reach the same conclusion as the State Courts, namely, the evidence was sufficient to support a first degree murder conviction and, to the extent that the second issue was one of federal constitutional dimension, the Trial Court's overruling of the objection as to the prosecutor's closing statement, did not render Petitioner's conviction fundamentally unfair.

Accordingly, as none of Petitioner's issues merits relief, the habeas petition should be denied.

### D.    Certificate of Appealability

A certificate of appealability ("COA"), which is a prerequisite for allowing an appeal to a Court of Appeals, should not be issued unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2). A "substantial showing" requires a habeas petitioner to show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right[.]" Slack v. McDaniel, 529 U.S. 473, 484 (2000). See also Walker v. Government of The Virgin Island, 230 F.3d 82, 89-90 (3d Cir. 2000).

Applying this standard to the instant case, the court concludes that jurists of reason would not find it debatable whether the petition fails to state a valid claim of the denial of a constitutional right. Accordingly, a certificate of appealability should be denied.

CONCLUSION

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections and responses thereto in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.  Failure to timely file objections may constitute waiver of any appellate rights.

Respectfully submitted,

*/s/  Amy Reynolds Hay*
United States Magistrate Judge

Dated: 29 January, 2009

cc:     The Honorable David S. Cercone
        United States District Court Judge

        Daniel Bernard Manchas, III
        EU-7366
        SCI Huntingdon
        1100 Pike Street
        Huntingdon, PA 16654-1112

        All counsel of record via CM-ECF